```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
UNITED STATES OF AMERICA,

                                                    MEMORANDUM & ORDER
          – against –                               24-CR-78 (MKB)


ELVIS DAN ATOMEI,

                              Defendant.
-------------------------------------------------------------------
```

MARGO K. BRODIE, United States District Judge:

A grand jury indicted Defendant Elvis Dan Atomei on February 21, 2024, charging him with access device fraud in violation of 18 U.S.C. §§ 1029(a)(1), (4); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1); and conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. (*See* Indictment, Docket Entry No. 1.) On February 29, 2024, the Court arraigned Atomei and ordered him detained.[1] (Min. Entry dated Feb. 29, 2024, Docket Entry No. 19; Order of Detention.)

On March 14, 2024, Atomei presented a bail application and moved for pretrial release pursuant to 18 U.S.C. § 3142(c), which the government opposed. (Mot. for Release from Custody on Proposed Bail Conditions ("Def.'s Mot."), Docket Entry No. 56; Gov't's Opp'n to Def.'s Mot ("Gov't's Opp'n"), Docket Entry No. 61.) On March 27, 2024, the Court held a bail hearing and reserved decision on Atomei's motion. (*See* Min. Entry dated Mar. 27, 2024.) For the following reasons, the Court denies Atomei's motion.

---

[1] Magistrate Judge Vera Scanlon ordered detention, finding that, after considering the factors set forth in 18 U.S.C. § 3142(g), the government proved by a preponderance of evidence that no condition or combination of conditions of release would reasonably assure Atomei's appearance as required. (Order of Detention 2, Docket Entry No. 26.)

I. **Discussion**

   a. **Standard of review**

The Bail Reform Act requires a court to order the pretrial detention of a defendant if, after a hearing, the judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Mattis*, 963 F.3d 285, 290 (2d Cir. 2020) (quoting 18 U.S.C. § 3142(e)(1)). In making its determination, the court must consider the following factors set forth in section 3142(g):

> (1) the nature and the circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); *United States v. Kelly*, No. 20-1720, 2020 WL 7019289, at *1 (2d Cir. Sept. 8, 2020) (same) (quoting *Mattis*, 963 F.3d at 291); *see also United States v. Zhang*, 55 F.4th 141, 149 (2d Cir. 2022) (explaining that the court shall consider these four factors in determining whether there are conditions that will reasonably assure the defendant's appearance). "[T]he weight given to each factor will inevitably vary from case to case, and might even vary depending on whether the inquiry relates to a defendant's danger or to his risk of flight." *Zhang*, 55 F.4th at 149–50. A finding that the defendant presents a flight risk must be supported by a preponderance of the evidence, *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007), and a finding that the defendant is dangerous must be supported by clear and

2

convincing evidence, *United States v. Artis*, 607 F. App'x 95, 96 (2d Cir. 2015); *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995). Upon finding that the defendant presents a flight risk or a danger to the community, the court must then determine whether there are conditions of release that will assure the appearance of the person and the safety of those in the community. *Zhang*, 55 F.4th at 151 (considering whether the bail package held sufficient "moral suasion" over the defendant and mitigated the risk of flight and danger). In the pretrial context, the government bears the burden of showing that the defendant should be detained, *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001), and it "may proceed by proffer," *Ferranti*, 66 F.3d at 542; *see also United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004).

A bail hearing "may be reopened . . . at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Blanco*, 570 F. App'x 76, 78 (2d Cir. 2014); *United States v. Schwamborn*, 249 F. App'x 906, 907 (2d Cir. 2007). "A court may also revisit its own decision pursuant to its inherent authority, even where the circumstances do not match [this] statutory text." *United States v. Maxwell*, 510 F. Supp. 3d 165, 169 (S.D.N.Y. 2020) (first citing *United States v. Rowe*, No. 02-CR-756, 2003 WL 21196846, at *1 (S.D.N.Y. May 21, 2003); and then citing *United States v. Petrov*, No. 15-CR-66, 2015 WL 11022886, at *3 (S.D.N.Y. Mar. 26, 2015)).

3

### b. The Court denies Atomei's motion

Atomei argues that he should be released on bail, to be secured by the property owned by Atomei and his wife, because he poses neither a risk of flight nor a danger to the community.[2] (Def.'s Mot. 1–2.) Regarding his risk of flight, Atomei notes that he "returned to [c]ourt in all three instances of [his] past criminal conduct," and that he "did not flee from any jurisdiction" despite facing the prospect of, and actually serving, carceral sentences. (*Id.* at 2; *see also* Tr. of Bail Hr'g ("Hr'g Tr.") 8:15–23 (contrasting Atomei's position with that of a hypothetical defendant who fled from multiple jurisdictions after being convicted).) In addition, Atomei argues that he has "significant family here in the United States," including his wife and three-year-old son, both of whom are United States citizens, and that he has lived with his family in the residence he owns in Woodside, Queens since 2021. (Hr'g Tr. 13:14–20; *see also* Def.'s Mot. 1.) Finally, Atomei disputes the government's characterization of his actions at the time of his arrest. (Hr'g Tr. 13:25–14:23). He argues that the government's assertion that he tried to flee is mere "conjecture," (*id.* at 14:1), and that instead, "when [Atomei] heard that they were police, he got back in bed with his three-year-old son and started hugging his son," which is where he was apprehended, (*id.* at 14:10–12; *see also* Def.'s Mot. 2).

---

[2] Atomei also argues that conditions at the Metropolitan Detention Center ("MDC"), including "that the MDC was locked down for the vast majority of time that he has been detained there," constitute "exceptional reasons" warranting release on bail conditions pursuant to 18 U.S.C. § 3145(c). (Def.'s Mot. 2 (first citing 18 U.S.C. § 3145(c); and then citing *United States v. Chavez*, --- F. Supp. 3d ---, ---, 2024 WL 50233, at *8 (S.D.N.Y. Jan. 4, 2024)).) Although 18 U.S.C. § 3145(c) permits release in certain circumstances, section 3145(c) is not applicable to Atomei. Section 3145(c) is only applicable to those "subject to detention pursuant to section 3143(a)(2) [detention pending sentence] or (b)(2) [detention pending appeal], and who meet[] the conditions of release set forth in section 3143(a)(1) or (b)(1) [requiring, *inter alia*, the defendant to show by clear and convincing evidence that he or she is not likely to flee or pose a danger to the safety of any other person or the community if released]." 18 U.S.C. § 3145(c). Atomei's detention is subject to section 3142 (detention pending trial), and he is therefore not eligible for release pursuant to the "exceptional reasons" exception in section 3145(c).

4

Regarding danger to the community, Atomei argues that the government has not met its burden to show, by clear and convincing evidence, that he is a danger to the community. (Hr'g Tr. 4:22–25, 6:6–7.) Atomei argues that, with respect to the nature and circumstances of the offense, "it would be bad precedent to treat a nonviolent crime like [the charged offenses]" as requiring pretrial detention alongside "other defendants . . . [who] are dangers to the community." (*Id.* at 11:5–16.) Atomei also disputes the strength of the government's evidence. (*Id.* at 23:22–24:15.) In addition, Atomei notes that "this is his first arrest in the United States," (*id.* at 22:24), and argues that conditions of release, such as "monitor[ing] his activities to ensure that he [does] not engage in any" criminal activity, would mitigate the risk of harm to the community, (*id.* at 23:1–8).

The government argues that Atomei "poses both a flight risk and risk to the community's safety from his criminal activity if released on bail." (Gov't's Opp'n 1.) Regarding risk of flight, the government first argues that Atomei's "conduct [on] the day of his arrest demonstrates that he did not hesitate to attempt to flee from law enforcement," because he was "seen climbing out of [a second floor] window and standing on top of the rear roof of [his] residence" until an agent drew a weapon and ordered Atomei not to move. (*Id.* at 1–2.) Second, the government argues that Atomei's "multiple convictions in different countries shows that he . . . [has] international ties," and further notes that "he is not a citizen of this county and [that] he does not have immigration status in this country." (Hr'g Tr. 18:8–11; *see also* Gov't's Opp'n 1 ("Atomei does not dispute that he has significant ties to foreign countries, to which he could readily flee from prosecution.").) Third, the government argues that Atomei has significant resources to flee because "law enforcement agents recovered over $40,000 in cash" during the search of his residence. (Hr'g Tr. 18:18–22.) Finally, the government contends that the "evidence of the

5

crimes is . . . very strong," that Atomei was "captured on camera committing these crimes, both in still images as well as video surveillance," and that skimming devices and $40,000 in cash were found in his residence on the day of his arrest. (*Id.* at 18:20–22, 19:3–14; Gov't's Opp'n 2.)

Regarding danger to the community, the government argues that Atomei has demonstrated a "lack of respect for the law" through "continued criminal activity for over [seventeen] years." (Hr'g Tr. 17:8–9.) The government also alleges that Atomei continued engaging in criminal activity "up until early 2024," even though "the charged crimes . . . are alleged to have occurred in 2022," (*id.* at 17:10–14), and that he "does not appear to be willing to stop," (*id.* at 18:4–5). In addition, the government argues that the charged conduct "is not a low-level crime . . . [and] involved the theft of . . . multiple identities and multiple victims' bank accounts." (*Id.* at 17:19–23.)

### i. Atomei poses a risk of flight

After evaluating the section 3142(g) factors, the Court finds that Atomei poses a risk of flight. First, the offenses with which Atomei has been charged — access device fraud, aggravated identity theft, and conspiracy to commit bank fraud, (*see* Indictment ¶¶ 3, 6, 7, 16) — are serious. *See United States v. Boustani*, 356 F. Supp. 3d 246, 249, 252 (E.D.N.Y. 2019) (noting that the charged conduct — conspiracy to commit wire fraud, conspiracy to commit securities fraud, and conspiracy to commit money laundering — was "serious"), *aff'd*, No. 19-344, 2019 WL 2070656 (2d Cir. Mar. 7, 2019). The government alleges that Atomei and his co-defendants "have collectively stolen hundreds of thousands of dollars and compromised hundreds of victim[s'] accounts" through their "long-running and extensive ATM skimming scheme," in which "skimming" devices and pinhole cameras were installed in ATMs to collect debit- and credit-card information from individuals using the ATMs. (Gov't's Detention Letter

6

1–2, Docket Entry No. 16.) If convicted for the conspiracy offense alone, Atomei faces a maximum sentence of thirty years of imprisonment.³ *See* 18 U.S.C. §§ 1344, 1349. The nature of Atomei's alleged offenses and his potential for a lengthy period of incarceration provide a motive to flee. *See, e.g., United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018) ("The district court correctly characterized the charges against [the defendant] as 'serious' and observed that they exposed him to a maximum possible prison term of 30 years, thereby providing a strong incentive to flee the country.")

Second, the evidence against Atomei appears to be strong. The government has proffered that "Atomei [was] captured on camera committing these crimes, both in still images as well as video surveillance," (Hr'g Tr. 19:5–7), and that skimming devices and $40,000 in cash were found in Atomei's residence at the time of his arrest, (Gov't's Opp'n 2; Hr'g Tr. 18:20–22). *See, e.g., Mercedes*, 254 F.3d at 437 (finding that the evidence against a defendant charged with conspiracy to commit armed robbery of a drug dealer was strong when "[l]oaded guns, as well as fake police badges and handcuffs, were found in the car in which [the defendant] was a passenger"); *United States v. Paulino*, 335 F. Supp. 3d 600, 612–13 (S.D.N.Y. 2018) (finding that evidence against the defendant was "weighty," particularly because video and photographs captured the defendant committing at least part of the crime, but noting that the court was "cautious to afford this factor undue weight" to avoid punishment for a crime for which the government had not yet proven the defendant's guilt).

---

³ Atomei also faces a mandatory minimum of two years in custody if convicted of the aggravated identity theft charge. *See* 18 U.S.C. § 1028A(a)(1); *Dubin v. United States*, 599 U.S 110, 113–14 (2023) (noting that aggravated identity theft "trigger[s] a mandatory 2-year prison sentence").

7

Third, Atomei's history and characteristics support that he poses a risk of flight. Atomei has a history of convictions for ATM skimming. Although he has not been previously convicted in the United States, the government proffers, and Atomei does not dispute, that he was convicted for conduct related to ATM skimming in Germany in 2007, in Hungary in 2014, and in the Czech Republic in 2016. (Gov't's Detention Letter 7; Def.'s Mot. 2; Hr'g Tr. 8:24–9:1, 25:9–14.) While the Court acknowledges that Atomei "returned to court" and "served his time" in those cases, (see Hr'g Tr. 9:1, 9:3, 9:19), he currently faces criminal charges that may result in significantly more prison time than did his foreign convictions,[4] (see Gov't's Detention Letter 7 (noting that Atomei was sentenced to fifteen months in prison for his conviction in Germany and eighteen months in prison for his conviction in Hungary)).

Other characteristics that support a finding that Atomei poses a risk of flight are his international ties as a Romanian citizen with no immigration status in the United States, and the fact that he has no current employment in the United States.[5] (Gov't's Detention Letter 7;

---

[4] The government also argues that Atomei's past conduct, such as his alleged attempt to flee on the day of the arrest, support a finding that he poses a risk of flight. (Gov't's Opp'n 1–2; Hr'g Tr. 19:17–20:24.) The Court finds that, even without considering Atomei's alleged attempt to flee, the government has met its burden to show his risk of flight by a preponderance of the evidence.

[5] Although the government argues that Atomei has "access to significant resources and would potentially risk losing or abandoning the house that would be put up to flee prosecution of this crime," the only evidence the government proffered in support of its assertion is the $40,000 in cash found in Atomei's home at the time of his arrest, which has been seized, and information "from the investigation generally." (See Hr'g Tr. 21:20–22:11.) The Court does not find this evidence sufficient to show that Atomei has "access to significant resources" to flee. Cf. Maxwell, 510 F. Supp. 3d at 174 ("Defendant's extraordinary financial resources [of at least millions of dollars] also continue to provide her the means to flee the country and to do so undetected."); United States v. Esposito, 309 F. Supp. 3d 24, 31 (S.D.N.Y. 2018) (finding that the government met its burden to show the defendant posed a risk of flight when $3.8 million in cash was found in his home at the time of his arrest, there was "a high probability that [he] ha[d] access to significant amounts of other liquid assets," and substantial evidence showed that he "exercise[d] some degree of control over the Genovese Family slush fund").

8

Gov't's Opp'n 1; *cf.* Def.'s Mot. 1 ("Atomei, until last year, owned a pizzeria in Queens and is in the process of obtaining a Green Card.")); *see United States v. Baig*, 536 F. App'x 91, 93 (2d Cir. 2013) ("A 'history of travel and residence in other countries' is another factor that we have approved in the determination [of] whether a defendant is likely to abscond while on bail." (first quoting *United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir. 2000); and then citing *Mercedes*, 254 F.3d at 438)); *Mercedes*, 254 F.3d at 438 ("Importantly, [the defendant] is not employed, and he is not a U.S. citizen. Given the small amount of money assessed as a surety here [$10,000 on a $200,000 bond], and given the potential sentence that [the defendant] faces, the risk that he may flee weighs strongly against his release."). *But see United States v. Balde*, 462 F. Supp. 3d 465, 469 (S.D.N.Y. May 26, 2020) (finding that a noncitizen defendant did not pose a risk of flight because "he lived for many years in the United States with his wife and children" and "retained two immigration lawyers to seek a stay of removal from ICE pending application for lawful status through his U.S. citizen spouse"). The Court finds that Atomei's ties to New York — family ties through his wife and three-year-old son, who are United States citizens, and a family residence in Queens purchased in 2021 for $970,000, (Def.'s Mot. 2) — do not overcome the government's proffered evidence demonstrating Atomei's motive for flight, especially in light of Atomei's criminal history and international ties, *see Blanco*, 570 F. App'x at 77–78 (affirming bail denial based on flight risk despite the defendant's strong family ties through "his wife, children, and mother, all of whom are United States citizens;" a "substantial bail package, including a $700,000 bond secured by family residences;" the nonviolent nature of his crime; and his amenability to electronic surveillance when, *inter alia*, he was not a citizen of the United States, faced a possible maximum sentence of forty years and likely removal from the United

9

States, and did not have steady lawful employment). Accordingly, the Court finds that the government has shown Atomei's risk of flight by a preponderance of the evidence.[6]

### ii. No conditions of release will adequately assure Atomei's appearance in court

The government has met its burden to show that no condition or set of conditions would ensure Atomei's return to court. In his motion, Atomei proposed a bail package consisting of a $970,000 bond, co-signed by his wife and secured by the deed to his family's residence,[7] (Def.'s Mot. 2), and, at the bail hearing, he added that he "would agree to an ankle bracelet," if the Court so ordered, (Hr'g Tr. 16:1–2). First, the proposed bond is insufficient, as Atomei's equity in the residence does not provide sufficient moral suasion to ensure that he would not flee to another jurisdiction.[8] *See* 18 U.S.C. § 3142(g)(4) ("[The Court may] . . . conduct an inquiry into the source of the property . . . offered as collateral to secure a bond, and shall decline to accept . . . the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required."); *cf. Mattis*, 963 F.3d at 290, 293 (affirming release on $250,000 bond where the court found "that the bond condition provided 'sufficient moral suasion' to ensure compliance with the conditions of release . . . [because the] bond condition

---

[6] Because the Court denies release on bail based on Atomei's flight risk, it declines to decide whether detention is also justified based on dangerousness. *See Blanco*, 570 F. App'x at 78 (declining to decide whether the defendant posed a danger to the community when it had already decided the district court acted in its discretion in denying bail based on risk of flight).

[7] Atomei and his wife appear to have approximately $236,000 worth of equity in the residence, not including any appreciation in its value. (*See* Def.'s Mot. 2 (reflecting a purchase price of $970,000 and $734,292.16 in outstanding principal, according to the most recent mortgage statement).)

[8] In addition, the government argues that Atomei's wife "would not be an appropriate suretor with moral suasion in part because much of the evidence of the crimes found within Mr. Atomei's home were in common spaces that they shared." (Hr'g Tr. 21:7–10.) The government notes that there "were skimming devices found just on top of a cart in their living room, which suggests that [Atomei's wife was] aware of the crimes." (*Id.* at 21:14–16.)

notably leaves multiple family members and friends of each defendant liable for a quarter million dollars if the defendants violate any condition of release"). Second, as other courts in this circuit have found, location monitoring is inadequate because ankle monitors can be easily removed and ensure only a reduced head start should Atomei decide to flee. *See United States v. Wang*, No. 23-CR-118, 2023 WL 4551637, at *3 (S.D.N.Y. July 14, 2023) (first citing Tr. of Bail Hr'g at 5:4–6, *United States v. Freeman*, No. 21-CR-88 (S.D.N.Y. Feb. 19, 2021); and then citing *United States v. Zarger*, No. 00-CR-773, 2000 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000)); *United States v. Kwok*, No. 23-CR-118, 2023 WL 3027440, at *7 (S.D.N.Y. Apr. 20, 2023) ("GPS monitoring is inadequate, as ankle monitors can be removed and ensure only a reduced head start should a defendant decide to flee." (citations omitted)); *see also United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (noting that electronic monitoring devices "can be circumvented" and "rendered inoperative"). Therefore, the Court finds Atomei's proposed bail package insufficient and denies Atomei's application for release.

## II. Conclusion

Accordingly, the Court denies Atomei's motion.

Dated: May 2, 2024
   Brooklyn, New York

SO ORDERED:

   s/ MKB
   MARGO K. BRODIE
   United States District Judge

11